LORAIN STEEL CO. v. PAIGE IRON WORKS et al.

(Circuit Court, N. D. Illinois, E. D.    January 24, 1908.)

No. 27,972.

PATENTS—INFRINGEMENT—RAILWAY SWITCHES.

The Kress patent No. 633,723 and the Krauss patent No. 555,171, both for improvements in railway switches of the tongue type, most generally used on street railways, and each for means for preventing the kicking of the switch, if conceded validity, are each limited by the prior art to a very narrow scope, and closely to the devices shown and described. As so construed, *held* not infringed.

In Equity. On final hearing.

George H. Parmelee, Clarence P. Byrnes, and Knapp, Haynie & Campbell (Thomas W. Bakewell and Charles MacVeagh, of counsel), for complainant.

Peirce & Fisher (George P. Fisher, Jr., of counsel), for defendants.

KOHLSAAT, Circuit Judge. This is a suit for infringement of claims 1, 2, 3, 5, and 6 of patent No. 633,723, granted to the Johnson Company, as assignee of C. F. Kress, Jr., September 26, 1899, and

claims 1, 2, and 3 of patent No. 555,171, granted to the same company, as assignee of C. H. Krauss, February 25, 1896, both patents being for alleged improvements in railway switches. The title of complainant herein to both patents is admitted by stipulation. The claims of the Kress patent No. 633,723 alleged to be infringed are as follows:

"1. In a railway-switch, the combination of a foundation structure, a plate having a recess and secured to said structure, a tongue having a depending pintle at its heel end and seated at said end in the said recess, and an opening through the floor of said plate for the pintle, substantially as described.

"2. In a railway-switch, the combination of a foundation structure, a plate having a recess and secured to said structure, a tongue having a depending pintle at its heel end and seated at said end in the said recess, an opening through the floor of said plate for the pintle, and a guard for one side of the heel end of the tongue formed by one wall of the recess, substantially as described.

"3. In a railway-switch, the combination of a tongue having a depending pintle at its heel end, a member having a recess in which the heel end of the tongue is seated, and a portion of one wall of said recess taking the place of a portion of the tread-surface of the tongue from the heel end of the tongue to a point in advance of the axial line of the pintle, substantially as described."

"5. The combination, in a railway-switch, of a foundation structure, a plate secured therein and having a recess, a pivoted switch-tongue seated at its heel end in said recess, the walls of said recess taking the place of cut-away portions of the sides of the tongue, substantially as described.

"6. The combination, is a railway-switch, of a foundation structure having a recess, a plate removably secured in said recess and itself having a recess, and a switch-tongue seated in said last-mentioned recess at its heel end and having a depending pintle passing through the floor of said plate, substantially as described."

Those of the patent to Krauss, No. 555,171, are as follows:

"1. In a railway-switch, a tongue-fastening comprising a bolt extending vertically downward from the tongue, and a spring in the frame of the switch and adapted to exert a downward force upon the bolt.

"2. In a railway-switch, a tongue-fastening comprising a bolt passing through the tongue and removably secured therein, said bolt passing downward into a pocket in the switch-frame, and a spring encircling said bolt and adapted to exert a downward force thereupon.

"3. In a railway-switch having a vertically-pivoted tongue, a pocket in the frame of the switch and beneath the tongue, a spring in said pocket and a bolt depending from the tongue and engaging the spring."

The defenses are, first, the invalidity of the patents; second, noninfringement.

Defendants admit the manufacture and sale of two forms of switches which are charged by complainant to infringe the patents in suit. One of these is illustrated in letters patent No. 768,969, granted to the Buda Foundry & Manufacturing Company, as assignee of William S. Weston, August 30, 1904, and is referred to by counsel as "Defendants' Switch No. 1;" the other is shown in "Defendants' Exhibit Blue Print No. 12,900," referred to by counsel as "Defendants' Switch No. 2."

The devices of the patents in suit belong to a class commonly referred to as "tongue switches," most generally used on street railways, and seemingly the best form of switch for use in paved streets. This kind of switch in its simplest form consists of a tongue pointed at one end, and movably pivoted at its other or heel end to the underlying or foundation structure, so that its pointed end may be moved from

side to side, serving in one position as a tread for the car wheels, and in the other as a guide for the wheel flanges to deflect the car to another track. This general form of switch is admittedly old. Switches of this kind, although having the advantages of compactness and simplicity, have been a source of much annoyance, and require constant watchfulness and care to avoid derailments and other accidents which occur most frequently on these parts of the track. The cause of this, primarily, is the wear incident to the pounding of the car wheels. When the heel or its underlying foundation becomes worn, there is danger that the front wheel flange of a car coming point on to the switch, having reached the pivot on the course off the main track, will strike the heel at a point beyond the pivot, and by the leverage thus exerted will throw the switch, so that the rear wheels will be guided onto the main track after the front wheels have taken a course onto the switch track, this almost invariably causing derailment. A sudden blow on the tread side of the heel may also throw the switch, the dirt which collects about the heel forming a fulcrum on which the switch tongue may turn.

The objects of complainant's patents are to obviate all danger of the kicking of the switch—in the Kress patent by lessening the wear, and by making it impossible for the wheel flange to strike the heel of the tongue at a point beyond the pivot, and in the Krauss patent by holding the tongue firmly in place by means of a spring.

In the Kress device, the heel of the tongue is seated in a recess of a supplemental plate, which in turn is seated in the foundation structure. The pivot is located very near the extreme end of the heel of the tongue, where it extends through the floor of the underlying plate and into the foundation structure upon which the plate rests. This plate is recessed to receive the heel of the tongue, and the sides of the heel being cut away and the plate raised above the level of the upper surface of the tongue heel forms on each side walls or guards, thus protecting the heel from any contact with either the flange or the tread of the wheel.

The Krauss patent describes and claims a method for holding the tongue down in place by means of a bolt passing through a hole in the tongue and engaging a spiral spring placed in the frame of the switch, being so arranged that the spring exerts a downward pressure on the tongue.

Both of defendants' alleged infringing devices have the supplemental plate, with its recess for the heel of the tongue, seated in a pocket or depression in the foundation structure. The plate is a little larger than that of complainant's patent, and is slightly different in shape. It is recessed so as to protect only the guard or flange side, and not the tread side of the tongue.

The drawings of defendants' switch No. 1 (Weston patent No. 768,969) show a depending boss on the under side of the tongue heel, which fits into a corresponding depression in the floor of the supplemental plate. This, it is contended by complainant, performs the function of the depending pintle of the Kress patent in suit. It should be noted, however, that this boss does not extend through the floor of

the supplemental plate, nor have a bearing in the foundation structure, as in the Kress patent. In defendants' switch No. 2 it has been wholly eliminated. Passing through the heel of the tongue, the plate floor, and into the foundation structure, where its lower end engages with a nut, is a bolt, corresponding in function with the supplemental bolt of the Krauss patent, in that it is encircled by a spiral spring at its lower end, which, by compression between the nut and the under side of the floor plate, exerts a downward pressure on the tongue.

The validity of the patents in suit is denied, defendants contending that they cover an aggregation of elements, each long known and used in the prior art for purposes closely analogous to those of the patents in suit, requiring only the most ordinary mechanical skill in their combination.

It is abundantly shown in the record that it is old to employ hard interchangeable wear plates at points liable to excessive wear in railway track construction. Many prior patents have been introduced showing frogs and other crossing and switches utilizing separate pieces or plates readily removable so that they may be replaced when worn. It appears that as early as November, 1898, a tongue switch of the class here involved was manufactured and sold by the New York Switch & Crossing Company. This form of switch is shown in defendants' exhibit drawing No. 1,247, which discloses a hardened steel plate used in exactly the same position for the same purpose as in complainants' Kress patent. The principle of protecting the heel of the tongue against blows of the car wheel by cutting away sides of the heel near the pivot, and shaping the recess so that its sides adjacent to the heel will form walls, either to support the tread of the wheel or to prevent its flange from striking the heel, is disclosed in the Moxham patent No. 366,598 and in the Angerer patent No. 586,892. There also appears in the record testimony strongly tending to show that the Paige Iron Works, prior to the date of the patent in suit, made pivoted tongue switches, using a protecting side wall of the recess in which the heel of the tongue was pivoted to protect the guard side of the heel end of the tongue against kicking. It also appears in evidence that in 1892 the Lewis & Fowler Girder Rail Company made a switch (illustrated in defendants' exhibit drawings Nos. 420 and 508), containing a combination of elements very similar to that of the patent in suit.

Taking up the question of the validity of the Krauss patent: The Grigware patent No. 554,120 shows the heel of a switch tongue held down in place by a cotter-pin passed through the lower end of the pivot pin, there being a washer just above the cotter-pin. In the Moxham patent No. 388,994 is disclosed a pivoted switch tongue, the lower end of the depending pintle of which is held down in place by a washer and clamp. While such devices are not adapted to take up wear between the under side of the heel and the foundation on which it rests, the desirability of holding the heel of the switch tongue down in place is recognized and the principle applied in these two patents. In the Lewis patent No. 364,267 for railway crossing, we find a coil spring encircling a depending pintle or bolt passing through a floor plate exerting a downward pressure on the rail section of the device;

and an element of one of the claims of that patent is "a spiral spring adapted to hold said sections down in place." Inasmuch as the Supreme Court in the case of Weir v. Morden, 125 U. S. 98, 8 Sup. Ct. 869, 31 L. Ed. 645, has held that the use of a device in a railway frog and in a railway switch was analogous use, it becomes difficult to see how the replacing of the washer of the Grigware patent No. 554,120 or the Moxham patent No. 388,994 with the coil spring of the Lewis patent No. 364,267 can be held to rise to the dignity of invention.

The patents in suit do not belong to the pioneer class of patents, and I am of the opinion that if the validity of the Kress patent can be sustained, it must be confined closely to the device shown and described. Defendants' switches do not contain the depending pintle described and claimed by Kress, nor is complainant in a position to claim their arrangement as an equivalent, neither do they surround the guard side of the tongue by the walls of the supplemental plate.

If the Krauss patent has any patentable novelty, it must be found in features thereof not employed by defendant. At best it is a very narrow patent in view of the prior art. For these reasons, I am of the opinion that defendants' devices do not infringe. The bill will, therefore, be dismissed for want of equity.